# EXHIBIT 1

# IN THE SUPREME COURT OF BRITISH COLUMBIA

Citation: *Vanrootselaar v. Jacobs,*
2015 BCSC 2544

Date: 20151216
Docket: 22622
Registry: Fort St. John

2015 BCSC 2544 (CanLII)

Between:

**Justin Jan Vanrootselaar**

Claimant

And

**Jennifer Jacobs aka Jennifer Strang**

Respondent

Before: The Honourable Mr. Justice A. Saunders

## Oral Reasons for Judgment

In Chambers

| | |
|---|---|
| Counsel for the Claimant: | P.S. Boles |
| Counsel for the Respondent: | L.A. Berezan |
| Place and Date of Hearing: | Fort St. John, B.C.<br>December 16, 2015 |
| Place and Date of Judgment: | Fort St. John, B.C.<br>December 16, 2015 |

2015 BCSC 2544 (CanLII)

[1] **THE COURT:** I am going to order that the respondent forthwith return the children, who are the subject of this proceeding, to the Province of British Columbia until further order of the court.

[2] There was no compliance by the respondent with the requirements for relocation set out in Division 6, ss. 65. and 66, of the *Family Law Act*, S.B.C. 2011, c. 25. There is a requirement, and it is a mandatory requirement under s. 66, that a child's guardian who plans to relocate with a child must – the wording is emphatic – must give at least sixty days' written notice of the date of the relocation, and the name of the proposed relocation, to all other guardians and persons having contact with a child. The only exceptions to this that may be granted – and again the law is explicit on this point, under s. 66(2) – are if notice cannot be given or there is no ongoing relationship with the child. I will come back to those exemptions momentarily.

[3] Ms. Strang says in her affidavit that she wanted to relocate the children to Newfoundland, more or less by the end of August, so that they could enrol in the school system there. That being the case, she was under an obligation under the *Family Law Act* to provide the required written notice 60 days before the end of August, that is more or less by the end of June, or the first of July when you account for the fact that July and August each have 31 days. But in any event, that notice was required to have been given. Her counsel says that she was not aware of that requirement, but that lack of awareness is simply is not sufficient to relieve her of her statutory obligation.

[4] The first written notice was a text message sent by Ms. Strang on July 15th, which simply said, "we are moving to Newfoundland", and "we told your lawyer that last week". There is no specification of the particular location that she intended to move to within Newfoundland, and no specification of the proposed date of the relocation.

[5] There was subsequently a letter sent by Ms. Strang's counsel on July 27, 2015, confirming that Ms. Jacobs intended to move with the children from Powell

River, B.C., to Chamberlain, Newfoundland. That letter at least met the requirement of stating the proposed location, but it gave the date as September 1, 2015. That is not 60 days' notice, and therefore the notice was not in compliance with the Act.

[6] Ms. Strang's counsel points to the fact that there was no application made by Mr. Vanrootselaar under s.68 within 30 days of that letter for an order prohibiting the relocation. It is the case that no such application was made, but Mr. Vanrootselaar was under no legal obligation to do so as he had not received proper notice under s. 66. Likewise, Ms. Strang says in her affidavit that she went ahead and made the move to Newfoundland because there had been no verbal response or no indication from Mr. Vanrootselaar of his opposition. Again, under the Act, Mr. Vanrootselaar was not legally obliged to provide any noticem because 60 days' notice of the relocation simply had not been given.

[7] What did happen is that on August 28 – just 32 days after the July 27 letter, which, as I have said, was not in compliance with s. 66 – Ms. Boles telephoned counsel for Ms. Strang and advised that the move was opposed. Notwithstanding that verbal notice, Ms. Strang went ahead with the planned relocation the following day, August 29, knowing of the opposition, and removed the children from this jurisdiction. The court simply cannot countenance this kind of unilateral action.

[8] I am mindful here of the interests of the children. I am mindful of the fact that they will have been, presumably, enrolled in schools in Newfoundland for the last half of the year. But these children have led an almost nomadic life, from what I have been told, with multiple moves over the last five years between Newfoundland, Grand Cache and Powell River, British Columbia. So it can hardly be the case that the children are tied in any meaningful sense to that one location.

[9] Ms. Strang is pregnant and expecting another child at the end of January. She says that she made the move to Newfoundland so that she could receive support from her family. As understandable as her motive may be, again, the court cannot countenance this kind of unilateral action. There is a process to be followed, which must be followed so that the interests of interested parties may be properly

2015 BCSC 2544 (CanLII)

accounted for and the best interests of the children properly determined and protected.

[10] Ms. Strang had notice that Mr. Vanrootselaar was taking legal steps to establish a relationship with the children, to advance that relationship and put it on a proper legal footing. He had filed a Notice of Family Claim seeking an order respecting arrangements for parenting for a child, a declaration of joint guardianship, and an order for the cooperation of the respondent and providing for her consulting with him as to matters affecting the children. He sought specified graduating parenting time with the children. He had also, under Schedule 5, given notice of his intention to seek an order under the *Family Law Act* prohibiting and restraining the respondent from changing the residence of the children from Powell River, B.C., without an agreement in writing, and prohibiting and restraining the respondent from removing the children from B.C. without agreement in writing from the claimant or a court order.

[11] So notice had been given by Mr. Vanrootselaar of his desire to advance his legal interests in establishing a relationship with the children and her unilateral frustration of Mr. Vanrootselaar's attempts to do this are simply unacceptable. That is why these provisions are in place in the *Family Law Act*. The children are going to have to come back.

[12] With respect to the exemption requirements under s. 66, sub (2) provides that the court may grant an exemption from all or part of the requirements to give notice if satisfied that (a) there is a risk of family violence, that is not relevant here;
(b) provides where there is no ongoing relationship between the child and the other guardian or the person having contact with the child. There was no reliance placed on that specific provision in the application response filed by Ms. Strang. Nevertheless I have given consideration to whether I would exercise my jurisdiction or my discretion in that regard. I cannot find in the circumstances as they have been described to me that this is a situation of there having been no ongoing relationship with the children. It sounds to me from the description that the children had, at this

2015 BCSC 2544 (CanLII)

point in time, no personal contact with Mr. Vanrootselaar, but at least they were beginning to have telephone contact and indeed from the time of Ms. Boles being retained -- which was late May I think you indicated, Ms. Boles?

[13] MS. BOLES: Correct, yes, May 21 was the filed claim.

[14] THE COURT: Yes, in late May 2015, and that more recently there has been increased telephone contact. There was something of a relationship there.

[15] But more to the point, this is a factor which would lead me, even if I found there was no ongoing relationship, not to grant an exemption. There had been no relationship here for a period of many years. It is true that Mr. Vanrootselaar may not have pursued all of his legal rights, and did not vigorously pursue his legal rights at all times, with respect to his parenting of the children. Nevertheless I am satisfied that, in good measure, this is because the previous nomadic lifestyle I referred to. Ms. Strang acknowledges in her affidavit that there have been at least months at a time when Mr. Vanrootselaar has had no idea where the children have been. For that reason, particularly in light of the fact that legal proceedings had been commenced and Ms. Strang had been given notice of Mr. Vanrootselaar's desire to improve upon the relationship he had with the children, all of that would weigh against me exercising my discretion to grant an exemption.

[16] Now, with respect to the other aspects, paragraph (2) will go, as well. There will be an order also restraining and prohibiting the respondent from removing the children from the Province of B.C. until further order of this court. I will say further, although this was not specifically sought in the notice of application, it is a corollary to those first two paragraphs, that upon returning the children to British Columbia, Ms. Strang will forthwith provide Mr. Vanrootselaar with notice of where the children are located and will provide contact information, including a telephone number and, if Skype access has been exercised, including a Skype address which may be used.

[17] Paragraph (3) of the order sought is an order suspending enforcement by FMEP of Newfoundland proceedings for arrears of child support. I am satisfied from

2015 BCSC 2544 (CanLII)

the material I have been given that the order of the Newfoundland court for support was based on a material misrepresentation by Ms. Strang of Mr. Vanrootselaar's income. She swore to the following in an affidavit filed in Supreme Court of Newfoundland and Labrador Family Trial Division, proceeding number 20130122:

> 7. That from June 21, 2009 to present, the Respondent has worked as a contractor for Western Canadian Coal in Tumbler Ridge, British Columbia. In this position, the Respondent earns $85 per hour and works 12 hours per day, seven days on and seven days off.
>
> 8. That I attach the following Exhibits to this Affidavit as confirmation of the numbers referred to in the preceding paragraph:
>
> i. Exhibit "A": a copy of a contract between the Respondent as "Contractor" and Wolverine Coal Ltd. as "Owner", dated June 25, 2009, in which the fee for the Respondent's services is set at $85.00 per hour;
>
> ii. Exhibit "B": three (3) invoices dated August 5, 2009, August 17, 2009 and September 9, 2009, in which the Respondent invoiced the Owner $85.00 per hour for services rendered."

[18] She went on to say, at para. 9:

> 9. That based on the numbers referred to in paragraph 7 of this Affidavit, I calculate that the respondent earns $171,360 per year.

[19] It was on that basis that the Newfoundland court made its child support order.

[20] That affidavit of Ms. Strang was false in several respects. One is that, in para. 7, Ms. Strang was purporting to provide information based on her own knowledge and belief. Ms. Strang, however, could have had no personal knowledge as to what Mr. Vanrootselaar had been earning from November 2009 onwards, because the parties had been separated. She then presented the exhibits referred to in para. 8 as confirmation of the wage figures. Her use of the word “confirmation” implies that she had an independent source of knowledge for the information stated in para. 7. We know now that Ms. Strang could have had no independent knowledge, because we have Mr. Vanrootselaar's income tax returns and he was not earning anything near this amount. The inference that I draw, knowing what Mr. Vanrootselaar's income actually was, is that the Exhibits relied upon by

2015 BCSC 2544 (CanLII)

Ms. Strang were in fact the only basis upon which she had come up with these figures that she was providing to the Newfoundland court.

[21] Second, those Exhibits – the contract documents and invoices she presents – are as between Wolverine Coal Ltd. and a numbered Alberta company operating as KC Mechanical. The contractor's address in the form of an agreement with Wolverine Coal gives a contact of Mr. Vanrootselaar – the contractor's address is given as "Attention Mr. Justin Vanrootselaar" – but that does not mean Mr. Vanrootselaar was the contracting party. Mr. Vanrootselaar deposes that this numbered Alberta company was in fact his father's company. Ms. Stang had no information and no basis for claiming that this contract was with the respondent personally.

[22] What the form of contract did was provide for a rate of pay between Wolverine Coal and Company. Even if $85 an hour was being invoiced, that would have been the company's gross income. That is, of course, even if this had been Mr. Vanrootselaar's company, a completely different proposition from what his personal income after deduction of business expenses would have been.

[23] So I am satisfied that there was a material misrepresentation before the Labrador court. Counsel for Ms. Strang indicates variation of the order of the Labrador court will be consented to. In these circumstances the appropriate order of this court is simply that enforcement by FMEP of the arrears of child support be suspended.

[24] I am not going to make a further order that is sought compelling the return to the claimant of all funds. In my view, that kind of accounting has to be done by the Newfoundland court as part of a variation order, and I will leave it to my colleagues in Newfoundland and Labrador to pursue that.

[25] Paragraph 4 of the Notice of Application is adjourned.

[26] Paragraph 5, there have been no particulars provided here nor any suggestion made as to what the specified parenting time by the claimant will be. I

2015 BCSC 2544 (CanLII)

would not be prepared to make that order in any event now until we know where it is the children are going to be returned to. There is a presumption that they would return to Powell River but at this point that is only a presumption.

[27] I will simply say this, that there is an order being put in effect now by consent that there will be, in the interim, access by telephone commencing this Sunday at 2:00 p.m. My inclination, and my strong recommendation to the parties, would be that that order would remain in effect for three months, and that there would be no variation of that order for three months to give the children some period of time to further familiarize themselves with Mr. Vanrootselaar, or to continue to familiarize themselves, for there to be some, emotionally, some semblance of stability in the children's eyes to this contact with Mr. Vanrootselaar, and for Mr. Vanrootselaar to demonstrate that he has an intention of regularizing his contact. So that is my strong recommendation to the parties and I will say nothing more.

[28] Is six adjourned?

[29] MS. BEREZAN: Yes.

[30] THE COURT: Yes. Six was agreed upon.

[31] MS. BOLES: Yes, that's been adjourned because of an agreement that we spoke to before, and that is that there will be tax returns of both members of each couple to be produced in a Form 8.

[32] THE COURT: Yes.

[33] MS. BOLES: And My Lord, just for clarification, the contact is phone or Skype and it is to him --

[34] THE COURT: For phone --

[35] MS. BOLES: Fort St. John time, so --

2015 BCSC 2544 (CanLII)

2015 BCSC 2544 (CanLII)

[36] THE COURT: Right. 2:00 p.m. Fort St. John time. Yes, thank you. I remember that but I did not write it down, telephone or Skype access. But that should continue for three months would be my strong recommendation.

[37] As far as the declaration of guardianship goes, I am not prepared to make that order today. I would give the claimant liberty to reapply upon the children being returned to British Columbia and upon the access being regularized.

[38] MS. BOLES: Could we adjourn that then?

[39] THE COURT: Yes. Yes. It is -- okay, we will adjourn it.

[40] MS. BOLES: All right.

[41] THE COURT: Costs?

[42] MS. BOLES: Costs. This was a proceeding that was been going along fine in terms of each party having concluded their pleadings, and it ultimately just went off the rails.

[43] THE COURT: Okay. You are asking for costs?

[44] MS. BOLES: I'm asking for special costs. This entire application in terms of the return as having set for October and subsequently is brought about purely because of the unilateral action of a person who knew litigation, and in particular the one thing I say speaks to costs most loudly in the special costs deserving of rebuke is that the response to the Family Claim, My Lord, was filed June 22, 2015. So when my friend made those submissions that her client didn't know, the only way her client couldn't know is if she didn't have counsel, and she has had counsel throughout. So I say this is conduct deserving of rebuke.

[45] THE COURT: Okay. Ms. Berezan?

[46] MS. BEREZAN: My only submission on this is that Ms. Jacobs believed that she was acting in good faith, and costs should just be in the ordinary course.

[47] THE COURT: Well, Ms. Jacobs may have believed that she was acting in the best interests of her children, despite her evidence to the contrary in the form of blaming Mr. Vanrootselaar for not contacting her. This cannot be seen by the court as having been a move that was made in good faith. It was a move that was made unilaterally, in contempt of Mr. Vanrootselaar's rights. That is reprehensible conduct, and there will be an order of special costs.

[48] MS. BOLES: My Lord, those special costs will be – have an order that they be taxed forthwith and paid? Otherwise we have to wait to the conclusion of matters.

[49] THE COURT: Yes. Absolutely.

“A. Saunders J.”

2015 BCSC 2544 (CanLII)